[No. 1913.]

## J. E. RAINEY *v.* THE STATE.

1. CONSTITUTIONAL LAW — GRAND JURY — CASE APPROVED.— A constitutional grand jury of this State, such as alone is competent to return a valid indictment, is composed of the exact number of twelve persons. See the opinion *in extenso* for the subject discussed and elaborated, and note the approval of the decision in the case of *Lott* v. *The State*, 18 Texas Ct. App., 627.

2. SAME — PRACTICE.— Note the approval of the rule laid down in Lott's case, *supra*, to the effect that, notwithstanding the failure of the Code to authorize a motion to quash an indictment upon the ground of such illegal organization of the grand jury which presented it, objection either by motion to quash or in arrest of judgment is available as against the indictment.

3. SAME.— CHALLENGE TO THE ARRAY of the grand jury upon the ground that it was composed of another than the constitutional number of twelve persons is not authorized by article 377 of the Code of Procedure; when independently construed, nor when construed in connection with articles 378, 380 and 381. Indeed, in view of the constitutional provision restricting the membership of the grand jury to twelve persons, it is beyond the power of the Legislature to enact a law requiring such a challenge, inasmuch as one accused of a felony can only be held to answer to an "indictment" (Bill of Rights, section 10), and an indictment can only be presented by a constitutional grand jury. See the opinion *in extenso* on the question.

4. SAME.— It is insisted in behalf of the State that the objection to the indict-
ment, being raised for the first time in this court, comes too late. *Held*, that
the position is not well taken. No objection can come too late which dis-
closes that a person has been put to answer for crime in a manner violative
of his legal and constitutional rights. A valid indictment is an indispensable
prerequisite to a legal prosecution for a felony, and if it be affirmatively dis-
closed by the record that the pretended indictment was returned by an un-
authorized body of men, assuming to act as a grand jury, all the acts of such
a body must be held void, and no laches of the accused will cure the irregu-
larity. The Legislature, therefore, even had it been so disposed, had no
power to invest the courts of this State with jurisdiction to try for felony in
any manner other than that prescribed by the Constitution. See the opinion
*in extenso* on the question.

5. SAME.— The effect of article 357 of the Code of Criminal Procedure, which
provides that " the jury commissioners shall select from the citizens of the
different parts of the county sixteen persons to be summoned as grand
jurors for the next term of the district court," especially when construed in
connection with article 376 of the same Code, cannot be held to authorize
the organization of a grand jury composed of any number of persons not
less than twelve nor more than sixteen. Such a construction is not only
unwarranted by the language of the act, but, if it were inevitable, it would
be without binding force, in view of the twenty-ninth section of the Bill of
Rights, which declares, in effect, that the Constitution is the paramount law
of this State, and that its provisions shall prevail over all conflicting legis-
lative enactments.

6. SAME.— To obviate the objection that the grand jury which presented the
indictment was composed of thirteen persons, the State insists that one of
the thirteen persons can be treated as an intruder, and that it was the duty
of the accused, at the proper time, to except to the indictment under the
second subdivision of article 523 of the Code of Criminal Procedure, upon
the ground that some person not authorized by law was present when the
grand jury was deliberating, or was voting upon the accusation against him.
*Held*, that the position is without merit, because the convocation of a valid
panel of a grand jury is an indispensable precedent to any proceeding on
the part of the accused, and a valid panel is composed of twelve and not
thirteen members. Note the *quære* of the court as to which of the thirteen
persons composing an illegal panel could be objected to as an intruder, and
note also the suggestion that it would be beyond the power of the Legisla-
ture to authorize the trial court to legalize a grand jury which, under the
Constitution, is illegal, by permitting the defendant to designate which of
the members of the panel in excess of the constitutional number should be
treated as intruders.

APPEAL from the District Court of Cooke. Tried below before
the Hon. F. E. Piner.

The indictment in this case charged the appellant with the mur-
der of J. D. L. Johnson, in Cooke county, Texas, on the 14th day of
January, 1885. His trial resulted in his conviction of murder in
the first degree, and his punishment was assessed at a life term in
the penitentiary.

The disposition of the case renders unnecessary even a synopsis of the lengthy statement of the facts.

*A. M. Thomason* and *W. B. Johnson*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

Hurt, Judge. J. E. Rainey, appellant, was tried and convicted of the murder of J. D. L. Johnson, the jury finding him guilty of murder of the first degree, and assessing his punishment at confinement in the penitentiary for life.

Article 415, Code of Criminal Procedure, provides:

" The fact of a presentment of an indictment in open court by a grand jury shall be entered upon the minutes of the proceedings of the court, noting briefly the style of the criminal action and the file number of the indictment, but omitting the name of the defendant, unless he is in custody or under bond." And in pursuance of this article the record in this case furnishes this entry:

"Thursday, April 23, A. D. 1885, being the fourth day of the first week and the fourth day of the term. Now comes the grand jury, thirteen members thereof being present, and through their foreman, J. S. Jagers, deliver to the judge of this court, in open court, the following named true bill of indictment, to wit: No. 1805. *The State of Texas* v. *J. E. Rainey* — murder." It therefore appears from the record that this bill of indictment was presented to the district court of Cooke county by a body of men composed of thirteen persons.

There was neither a motion to quash nor a motion in arrest of judgment made by the defendant; nor was the fact that the indictment was presented by thirteen persons in any manner called to the attention of the court below.

The first question we desire to notice is, whether a body composed of thirteen persons, though possessing all legal qualifications, constitutes a legal grand jury?

At common law a grand jury was composed of not less than twelve nor more than twenty-three men. But the constitutional convention of this State, having full power over the subject, settled this matter by providing that " grand and petit juries in the district courts shall be composed of twelve men; but nine members of a grand jury shall be a quorum to transact business and present bills." (Const. 1875, art. V, sec. 13.) Will, therefore, a body of men composed of more or less than twelve, though otherwise competent and

duly impaneled, be a legal, constitutional grand jury. We propose that this question shall be answered by the highest judicial authority of the sister States of the Union; for this is no novel question.

Before referring to the authorities in support of the negative of this question, we will briefly notice the authorities with respect to a petit jury, it being well settled that it must consist of the exact number prescribed by the Constitution. (See cases cited by Judge Willson in *Lott* v. *The State*, 18 Texas Ct. App., 627.)

If, therefore, a petit jury must be composed of the exact number of men prescribed by the Constitution, it follows, beyond the possibility of doubt, that the same rule must be applied to grand juries. For by what principle or mode of reasoning can it be held that to constitute a petit jury there must be neither more nor less than twelve men, and yet a grand jury may be constitutionally composed of more or less than twelve men?—both resting for their legal existence upon precisely the same constitutional provision,—yea, upon precisely the same words. We believe the argument of Judge Willson upon this subject in *Lott* v. *The State, supra,* unanswerable, and that it is beyond our ability to add strength to the same.

Let us return to grand juries. If the Constitution of a State prescribes that a grand jury shall be composed of an exact number of men, will a body composed of more or less than the prescribed number be a legal — constitutional — grand jury? How stand the authorities upon this question?

In *Finley* v. *The State*, 61 Ala., 201, under a statute specifically prescribing the mode of organizing grand juries, it is held that whenever the record of a court affirmatively declares that a body of men has been organized as a grand jury in violation of the statute, such a body of men so organized was not a grand jury, and that all acts of such body were absolutely void. To the same effect is the opinion in *Berry* v. *The State*, 63 Ala., 126.

In *The People* v. *Thurston*, 5 Cal., 69, it was held that an indictment found by a grand jury composed of more than twenty-three men is worthless, and all proceedings thereon are void. The opinion of Murray, Ch. J., we give in full:

" The appellant was indicted by a grand jury composed of twenty-four persons. This was erroneous. The statute provides that twenty-four shall be summoned, but limits the number of those competent to act to twenty-three.

" This was the rule at common law; twenty-three only being taken of the twenty-four summoned, so that twelve might constitute a majority. (See 4 Blackstone, 302.)

"If more than twenty-three persons can hold an inquest of the county, there .would be no limit to the number, and a party might be indicted by less than a majority of the jury, our statute having provided that twelve grand jurors may present an indictment.

"It is said that this objection comes too late, and ought to have been taken advantage of before trial. It does not appear upon the face of the indictment, and it is doubtful if it were known to the prisoner; even if such was the fact, I regard the indictment thus found by an illegally constituted body as worthless, and all proceedings based upon it void."

This is short and to the point; and we would remark, by the way, that this error does not appear to us to be "*a mere irregularity*," but one of fundamental and vital importance, such as renders all proceedings, each and every step in the prosecution, void.

In *Doyle* v. *The State*, 17 Ohio, 222, Justice Read, in delivering the opinion of the court, says:

"The first section of the act relating to jurors provides that they shall be judicious persons, having the qualification of electors. Fifteen qualified persons compose the grand jury. (§ 4.) Twelve of said jurors must agree before a bill of indictment or presentment shall be found. (§ 12.) No man shall be put to answer any criminal charge but by presentment, indictment or impeachment. No person can find an indictment but a grand jury. It requires fifteen qualified persons to compose a grand jury. A less number is not a grand jury. Fourteen are not a grand jury. Fifteen, not having the requisite qualifications, are not a grand jury. Fifteen persons, some having the legal qualifications and others not, cannot constitute a grand jury. Hence, in this case, if the plea be true — and its truth is admitted by the demurrer — the indictment was not found by a grand jury. That which is claimed to be a grand jury was only composed of fourteen persons having the requisite qualifications. The fact that twelve of the grand jury may find a true bill is no answer to the objection. That does not prove that a less number than fifteen qualified persons can compose a grand jury. Hence no indictment in this case was ever found by a grand jury, because there was no grand jury to pass upon it. Hence that which purports to be an indictment was no indictment, and the party charged could not be put upon trial to answer. It should have been quashed or set aside as a nullity."

Here again we have something more fatal — more deadly — than "*a mere irregularity*." (See, also, *Barney* v. *The State*, 12 Smedes & Marshall, 68; *The State* v. *Duncan*, 7 Yerger, 271; *The State* v.

*Cole,* 17 Wis., 674; *Kittral* v. *The State,* 9 Fla., 9.) In *The State* v. *Jacobs,* 6 Texas, 99, Justice Lipscomb holds that the grand jury by which the bill was found and returned, not being a legal grand jury, there was no error in quashing the indictment.

But it may be insisted that, as the defendant neither moved to quash the indictment, nor in arrest of judgment, nor pursued article 362, Code of Criminal Procedure, upon this subject, by challenging the array, or any person presented as a grand juror, this court cannot take cognizance of and revise this matter, though the fact that thirteen men composed the so-called grand jury which presented this bill appears of record. In *Lott* v. *The State, supra,* Judge Willson demonstrated that, although our Code failed to make this matter a ground for quashing the indictment, nevertheless this matter could be urged by exception to the indictment, or in arrest; and we feel that we can add nothing which would strengthen his argument upon this point.

But, as above stated, it is insisted that the legality of the grand jury can be objected to only at the time and in the manner pointed out in article 377, Code Criminal Procedure. That article provides: "Any person, before the grand jury have been impaneled, may challenge the array of jurors, or any person presented as a grand juror, and in no other way shall objections to the qualification and legality of the grand jury be heard. Any person confined in jail in the county shall, upon his request, be brought into court to make such challenge."

This article must be construed with articles 378, 380 and 381. By article 377 any person may challenge the array of jurors. And by article 378 the array of grand jurors means the whole body of persons summoned to serve as such, before they have been impaneled; and by article 380 a challenge to this body of persons may be made in writing, and for these *causes only:*

1st. That the persons summoned as grand jurors are not in fact the persons selected by the jury commissioners.

2d. In case of grand jurors summoned by order of the court, that the officer who summoned them has acted corruptly in summoning any one or more of them.

By article 381 a challenge to a particular juror may be made orally and for the following *causes only:*

1st. That he is not a qualified grand juror.

2d. That he is the prosecutor upon an accusation against the person making the challenge.

3d. That he is related by affinity or consanguinity to some person

who has been held to bail, or who is in confinement upon a criminal accusation.

By an inspection of these articles it will readily be seen that they make no provision for a challenge to the array because the body of persons summoned to serve as grand jurors is composed of less or more than twelve men. For article 380 specifically names the causes of challenge, and those causes *only* can be urged to the array. Hence there is no authority obtained from these articles to except or object to this body of men acting in the capacity of a grand jury, and therefore the objection cannot be reached by a strict compliance with their provisions.

To illustrate: Let us suppose that a body of persons composed of thirteen men selected by the jury commissioners have been regularly summoned and are present before the court; that each and every one of them is in every respect duly qualified to act as jurors, against none of whom can a legal objection be urged by any person; and the court proposes to impanel that body of men into a grand jury. Now we ask the question: Under what article of the Code, or either of the Codes, has the accused or any other person the right, or by what law of this State is it made the duty of the accused or any other person, *if present*, to open his mouth in objection to that body being impaneled? We have not been able to find any such law, and we venture the assertion that it does not exist. If the accused were present, he would have no challenge either to the array or to any individual juror, because he would have no cause for challenge recognized by the Code.

But let us concede, for the argument, that the Code, in the most explicit terms, had provided a challenge for this very cause, to wit: because there were more or less than twelve grand jurors; and had further explicitly provided that such objection should then be urged before the jury were impaneled, and not thereafter; would such an act be within the power of the Legislature? Would it be constitutional?

This objection is not to irregularities in forming, or to the *personnel* of, the grand jury. The objection that it was composed of thirteen men strikes deeper; it denies that such a body of men under our Constitution is a grand jury at all. The rule as stated by Justice Bradley in *United States v. Gale*, 109 U. S., 65, is: "That the proper mode of taking objection to the *personnel* of the grand jury, when the matter *does not appear of record*, is by plea in abatement." But suppose the objection to the *personnel* of the grand jury appears of record? This is not in this case, and hence we will not discuss it.

We will now return to the question whether it is within the power of the Legislature to pass an act requiring an accused person to object to the impaneling of more or less than twelve men to serve as grand jurors. A few plain and well understood constitutional provisions will, we think, settle this matter.

Our Bill of Rights declares "that no citizen of this State shall be deprived of life or liberty . . . except by due course of the law of the land." It also declares that "no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury," and our Constitution informs us in unmistakable terms that a grand jury is composed of twelve men,—neither 'more nor less. The citizen shall not be held to answer except upon an indictment of a grand jury. No persons can find an indictment but a grand jury. It requires twelve persons to compose a grand jury. A less nor greater number is not a grand jury. Hence this indictment was not found by a grand jury, because there was no grand jury to pass upon it; and therefore that which purports to be an indictment was no indictment, and the party charged could not be put upon trial to answer.

But it is insisted that the objection comes too late. In the language of Judge Read, in *Doyle* v. *The State, supra,* we say: "No objection can come too late which discloses the fact that a person has been put to answer a crime in a mode violating his legal and constitutional rights. The doctrine of waiver has nothing to do with criminal prosecutions. No person can be put upon his defense on the charge of crime, or be convicted of crime, except in the exact mode prescribed by law. And whenever it shall be made manifest, in the progress of a criminal prosecution, that the legal rights of the person charged have been violated, the court will permit the accused to have the benefit of the error.

"It is said the prisoner might have exerted his right of challenge to the poll or the array. He might not know that he was charged with crime, or that a bill would be found. But, apart from all this, the court has the power only to try a person who has been indicted for crime. What an indictment is, is matter of law. Who shall constitute a grand jury, how it shall be summoned, composed and organized, is all matter of positive law. No man can, by his consent or will, constitute a grand jury. No man can, by express consent, confer jurisdiction upon the court to try him for crime. No man, by express consent, can make that an indictment, authorizing the court to try that which, in fact, was not an indictment. Much less could that be converted into an indictment which, in law, was

not, by implied consent, derived from waiver or plea. Suppose that a paper, in the form of an indictment, should be put upon file, not purporting to be found by a grand jury, could the person charged, by entering a plea of not guilty, confer upon the court power to try and sentence him? No one would pretend it.

"Yet it is contended that if you have the form and not the substance, that lack of vigilance or mistake to take advantage of it at the right moment, or in a wrong mode, will convert the shadow into a reality. This is neither true in reason or sound in law; and it is time, in criminal prosecutions, that the whole cobweb of legal fiction and technical inference against the accused should be stricken down." (See, also, *Finley* v. *The State*, 61 Ala., 201, which, we think, is precisely in point. In this case it is stated that whenever the records affirmatively disclose that a body of men had been organized as a grand jury in violation of the statutes, all the acts of such body must be held void, and no laches of the accused will cure the illegality.)

We therefore conclude that the Legislature, if disposed, has no power to invest the courts of this State with jurisdiction to try felony cases, save in the manner prescribed in the Constitution; that there is no power in the Legislature to give jurisdiction over felonies in direct violation of the Constitution. Nor can the prisoner, either by mistake or unguardedly, confer jurisdiction on the courts to try and punish for felony. He will not be permitted to sacrifice his life or liberty, and entail infamy upon his posterity; for this mighty commonwealth has an interest in the lives, liberty and character of her citizens. Her policy, therefore, is to protect, not to destroy these, and hence it will not be permitted to the citizen to do so.

Again, it may be urged that by virtue of article 357, Code Criminal Procedure, a grand jury is composed of not less than twelve nor more than sixteen persons. This article provides that "the jury commissioners shall select from the citizens of the different portions of the county sixteen persons, to be summoned as grand jurors for the next term of the district court."

Now this article does not provide that sixteen persons shall, or may be, impaneled as a grand jury. The evident intention of the Legislature was to provide ready at court at least sixteen persons from whom twelve should be impaneled into a grand jury. This was for the purpose of expediting the business of the court, or to prevent delays which would frequently occur if but twelve were summoned. This view of this article is certainly correct when considered in connection with article 376, which provides as follows:

" When twelve qualified jurors are found to be present, the court shall proceed to impanel them as a grand jury, unless," etc. We therefore fail to find any authority from any acts of the Legislature authorizing the impaneling of more than twelve persons as a grand jury.

But let us concede, for the argument, that the Legislature had, in the most explicit, emphatic and unquestionable language, declared that a grand jury should, may or could be composed of more or less than twelve persons:— the Constitution fixing the number at twelve, neither more nor less, could any man within this State, who is at all familiar with the principles of constitutional government, be found who would assert the validity of such an act? The simple proposition is this:— The Constitution says that a grand jury shall be composed of twelve persons. The Legislature declares that a grand jury shall be composed of thirteen persons. Which shall prevail? Or, which is the legal grand jury, that composed of twelve, or that composed of thirteen? Does it require the slightest degree of legal acumen to answer this question? We think not; but on the contrary, we would have thought that a mere tyro in the profession would be master of the proposition and capable of solving it correctly. That the Constitution controls, and hence a grand jury must be composed of twelve persons, neither more nor less, is so clear a proposition as to be placed beyond the pale of discussion. There is nothing about which we can reason unless it be as to which is the supreme law of the State, a constitutional provision or an act of the Legislature. We will pursue this part of the subject no further than to remark that any matter declared by the Constitution cannot be ignored or changed by legislation. Section 29 of the Bill of Rights expressly declares that, " to guard against transgressions of the high powers herein delegated, we declare that everything in this ' Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto or *to the following provisions shall be void.*" All remaining portions of the instrument are thus evidently embraced and referred to.

Our much esteemed assistant attorney-general contends that, as the second subdivision of article 523, Code Criminal Procedure, gives to a party indicted the right, upon motion, to set aside the indictment because some person not authorized by law was present when the grand jury were deliberating upon the accusation against him, or were voting upon the same, the party should not be permitted to question the legality of the grand jury only in this manner, after indictment found. His position is that, as there are at least twelve

grand jurors, all over this number are intruders, and hence the defendant must have the indictment set aside on this ground, and that this is the only manner in which this matter can be reached after indictment found.

Those parts of the article bearing upon this subject read:

"A motion to set aside an indictment or information shall be based on one or more of the following causes, and no other: . . .

"2d. That some person not authorized by law was present when the grand jury were deliberating upon the accusation against the defendant, or were voting upon the same."

Now it is evident from this article, 1st, that there must be a grand jury, a legal grand jury, a constitutional grand jury, assembled, deliberating or voting upon an accusation against the defendant; and, 2d, that some person not authorized by law was present. If twelve persons only can be impaneled as a grand jury, a panel composed of more than twelve jurors is not a grand jury. Hence, to make the panel, or, which is the same, the whole body of grand jurors, a legal panel or grand jury, but *twelve persons must be impaneled.* That the impaneling of more or less than twelve jurors vitiates the whole panel and renders the body of persons thus impaneled without legal existence, and hence not a grand jury at all. Now, if this be so, of which there can be no doubt, there was no grand jury to deliberate or vote upon an accusation against defendant. There was no legal body of men assembled, deliberating or voting upon an accusation to be intruded upon by " persons not authorized by law to be present." The whole body of persons, those with apparent authority as well as the intruders, was illegally constituted a supposed grand jury, and was absolutely without lawful authority to deliberate or vote upon " an accusation against the defendant."

But again, which one of the jurors would the defendant select as the person who was present without authority? Suppose that thirteen persons had been impaneled. Now, which one of the thirteen, if impaneled just as the others, would be present without authority? From the suggestions made by these simple questions, it will readily be seen that it would be impossible for defendant to ascertain which was the intruder, and thus sustain his motion to set aside the indictment.

But here again let us suppose that defendant could select the person present without authority, and that the statute provided directly and imperatively that he should make the motion to set aside the indictment or forfeit his right ever afterwards to question the legality of the grand jury; would such an act be constitutional? Could

defendant's laches make that a grand jury which was not a grand jury? Will the carelessness or ignorance of defendant give to a body of men legal existence, and make that lawful which before was not lawful?

To compose a constitutional grand jury the panel must be composed of twelve persons, neither more nor less; a less or greater number is not a grand jury. The number of persons of which the panel is composed is, in this State, a question of constitutional law, and no man can, by his consent, will, carelessness or ignorance, constitute a grand jury. To convict and punish for felony, the party must be tried upon indictment. What an indictment is, is matter of law. It is the act of a grand jury. What constitutes a grand jury is matter of law. Unless indicted by a grand jury, there is no jurisdiction in the court to try the defendant, and it will not be questioned that no man, either by his express consent, laches or ignorance, can confer jurisdiction to try for felony. The citizen cannot be put upon his defense on a charge of felony, or be convicted of crime, except in the exact mode prescribed by law, and *a fortiori* if prescribed by the Constitution.

Conceding, therefore, all that is claimed by the attorney-general, still the question remains, Is a body of men, though perfectly qualified in all other respects, composed of more than twelve persons, a constitutional grand jury? If not, neither our Legislature, courts, laches or ignorance of accused persons, can in any manner or by any methods make it such.

The judgment is reversed and the prosecution dismissed.

*Reversed and dismissed.*

[Opinion delivered December 2, 1885.]